WETMORE AND CHEESEBROUGH *against* BAKER AND SWAN.

IN error, from the *mayor's court* of the city of *Albany.*

*Baker* and *Swan* brought an action of *assumpsit* against the plaintiffs in error, in the court below. The declaration contained two counts, one for money had and received to the use of the plaintiffs, and the other on an *insimul computassent.* Plea, *non assumpsit.* It appeared that the plaintiffs and defendants and one *Joshua Ostrom,* having run a line of stages from *Albany* to *Utica,* there was an unsettled account between them. In *January,* 1811, a person was requested by *Baker* and *Cheesebrough* to make a settlement of the accounts ; and he went to *Palatine,* in the county of *Montgomery,* for that purpose, and *Ostrom* was present at the settlement. It appeared that *Ostrom* was to receive the money earned by the *western* part of the line of stages, and the plaintiffs and defendants the money earned by the *eastern* part ; and that, on an

A., B. & C.
and D. & E.
agreed to run
a line of stages
from *Albany*
to *Utica;* each
of the three
parties, was to
run a separate
portion of the
road, and to
furnish his
own horses
and carriages,
at his own expense and risk,
but extra expenses for extra carriages
were to be
paid jointly.
A., B. and D.
met at *Palatine,* in the
county of

*Montgomery,* and the accounts between the parties were examined and adjusted by F. at their request, who found a balance due from D. & E. to B. & C. of 144 dollars, for moneys received at *Albany.* It appearing that D. & E. being jointly concerned in running their part of the line, and generally understood to be partners, E. was held to be jointly chargeable for the money received by D., and for his acts ; and that an action for money had and received would lie in the *mayor's court* in the city of *Albany,* at the suit of B. & C. against D. & E. to recover the balance so stated to be due, by the agent employed to adjust the accounts, there being no such partnership existing, between the five persons concerned, as would prevent such a suit.

NEWYORK, examination of the accounts and vouchers, it appeared that the
Oct. 1812 plaintiffs had received less than their proportion, and the defend-
WETMORE  ants so much more than their share ; and upon a just distribution
v.
BAKER.   of the moneys received, there was a balance of 144 dollars due
from the defendants to the plaintiffs.   Ostrom consented to the
statement of the balance, and that it should be paid to the plain-
tiffs ; and it appeared that that sum had been received by the de-
fendants in the city of Albany.   The witness testified that Wet-
more and Cheesebrough were jointly concerned in running their
part of the line of stages, and it was generally understood that there
was a partnership between them.  When the adjustment of the ac-
counts was made, he did not hear any express promise by the de-
fendants to pay the balance so found ; but he was requested by
Cheesebrough to adjust the accounts: Wetmore was absent.

It was proved that the plaintiffs were to run one part of this
line from Albany to Utica, the defendants another part, and Os-
trom another part; each party to find his own horses and carriages,
at his own expense, and bear all losses, except extra expense for
extra carriages, which were to be borne by all the parties jointly.  It
was also proved that after the adjustment of the accounts at Pala-
tine, Cheesebrough said that he expected to pay the plaintiffs their
proportion of all that was received.

The defendants below then produced the articles of agreement
between Ostrom, of the one part, and Wetmore and Cheesebrough
and Baker and Swan, of the other part ; by which the parties of
the first part agreed with Ostrom to run a line of stages from Al-
bany to Schenectady, and thence to Palatine ; and Ostrom agreed
to run a line from Utica, to meet the other at Palatine.  The
agreement was dated the 17th of September, 1810, and was to be
in force for five years.   The defendants proved that the line of
stages in question was run under that agreement, and that the set-
tlement which had been proved arose out of it.  Cheesebrough did
not sign the agreement; and the defendants' counsel insisted, that
the acts and confessions of Cheesebrough could not bind or preju-
dice Wetmore, and that all the authority of the person who adjust-
ed the accounts was derived from Cheesebrough, so that Wetmore
could not be bound or concluded by the acts of such an agent; that
the agreement being the basis of the settlement, no action would lie
for a balance of accounts, unless there was an express promise to
pay ; and that, on the second count, the insimul computassent be-
ing the foundation of the assumpsit, it should have been made

within the jurisdiction of the mayor's court; that the sealed instru-

ment, being the basis of the action, ought to have been set forth in the plaintiffs' declaration; and that an action of *assumpsit* would not lie to recover the balance which might be found due on a settlement of accounts between the parties. The court below charged the jury, that the plaintiffs were entitled to recover, and the jury found a verdict accordingly. The defendants' counsel tendered a bill of exceptions to the opinion of the court below, on which the writ of error was brought to this court.

*Champlin,* for the plaintiffs in error.

*Lush,* contra.

*Per Curiam.* This was an action for money had and received, and as the money was received in the city of *Albany,* there cannot be a doubt but that the mayor's court had jurisdiction of the cause of action, which was the money so received. Here was, in some respects, a joint concern between the plaintiffs and defendants and *Ostrom,* but each party was to have his separate portion of the road, and to furnish his own team, at his own risk and expense. The partnership between the two defendants below was sufficiently proved to charge them jointly with the moneys received, and to charge one with the acts of the other; and, as here was a liquidation of accounts, and a settlement, and a balance struck by a common agent of all the parties, and the sum of 144 dollars found to be specially due from the defendants to the plaintiffs below, the law raised an implied *assumpsit* in them to pay it. There was no partnership existing between all the five persons concerned in running the stage, so as to interfere with this suit. The covenant introduced by the defendants below had nothing to do with this case. It only went to prove that the parties had agreed with each other to run a stage from *Albany* to *Utica,* but with distinct and separate interests and rights. Each party had his distinct share of the road. The judgment below ought, therefore, to be affirmed.

Judgment affirmed.