## GIBSON *vs.* STEVENS.

A sheriff cannot seize and sell partnership property, upon an execution against one of the partners, for his private debt. The creditor can have only the right of his debtor, which is an interest in the surplus, after paying the partnership debts.

A testator provided in his will, that A. B. should have, hold, and carry on, in a husband-like manner, free of rent, a certain house, store, and other real estate, until the time when the eldest son of the testator should be of age ; and directed that he should be trustee of the testator's two sons, for the following purposes, to wit : That he should retain in his hands, for their use, all the goods, securities, money and other stock in trade, belonging to said store, during said term—should trade upon the same in his own name, as such trustee, and at the end of the time deliver over to said sons all the original stock then remaining, and one full half of all the profits, and also interest upon a certain portion of such stock. A. B. accepted the trust, and carried on the business ; and on the arrival of the eldest son at the age of twenty-one, he executed to said A. B. a power of attorney, authorizing him to continue the business of the store, &c. as he had done under the will, and it was thereupon continued until the youngest son became twenty-one.—*Held*, that this did not constitute a partnership.

When a sheriff, on an execution against one, seizes and sells the property of another, the measure of damages is the value of the property ; and if that value is estimated by the sum received by the sheriff, he has no cause of complaint.

If there is an error in some particulars in the direction of the court to the jury, but the result of the charge is correct, such error furnishes no ground for a new trial.

TRESPASS for taking and carrying away a chaise, and other goods and chattels.

The defendant proved, that he was a deputy-sheriff, and having in his hands an execution against one Daniel Greenleaf, he seized the said articles by virtue thereof, as the property of Greenleaf, and after duly advertising the same, sold them at public auction, to satisfy said execution ; and he contended that the goods were the property of said Greenleaf, or that he was interested in them as a partner.

It appeared in evidence, that John Gibson, father of the plaintiff, in the year 1818, being the owner of a house and

land, and also of a store of goods in the town of Washington, and said Greenleaf being connected with him by marriage, and at the time out of business, and wholly insolvent, permitted said Greenleaf to occupy said house and land, and in said Gibson's name to take the charge and management of said store of goods, upon the agreement that said Greenleaf and his family were to have a living therefrom, by means of which said Greenleaf and his family were supported until April, 1821. At this time said Gibson died, having made his will, in which said Greenleaf was appointed one of the executors. Said will contained the following provision: "My will is, that Daniel Greenleaf, of Washington, 'shall and may have, hold, occupy, and carry on in a husband-'like manner, free of rent, the house, store, and all other real 'estate which I own in said Washington, from the time he 'commenced business there, until the time at which my son 'John Gibson arrives of age, or until he would arrive of age 'if he should so long live; and I do hereby order and direct 'that the said Daniel Greenleaf be trustee of my two sons, 'John and Charles, for the following purposes, to wit: The 'said D. Greenleaf shall retain in his hands, for the use of 'said John and Charles, all the goods, securities, money and 'other stock in trade which now belong to my store in 'Washington, during the term above mentioned, and shall 'trade upon the same in his own name, as such trustee, to 'the best advantage; and at the end of the term aforesaid, 'the said D. Greenleaf shall deliver up and pay over to the 'said John and Charles, and the survivor of them, or, in case 'of the decease of both, to the executors of my will, all the 'original stock, then remaining, which I have put into said 'store, or may have put in before my decease, and one full 'half of all the profits made by trading upon said stock, and 'also six per cent. interest upon the amount of said original 'stock, from the respective times said stock was put in, 'excepting upon two thousand dollars, part of the amount of 'such stock. And if my executors shall find that said Green-

'leaf is dissipating the property, they shall have a right 'to call him to account, and settle with him, and take the 'property into their hands."

Greenleaf accepted the trust, and carried on the business of the store, under the provisions of the will, until said John, the plaintiff, arrived of age; soon after which an inventory was taken of all the goods, and other property, including said chaise, &c., and the plaintiff then executed a power of attorney, authorizing Greenleaf to proceed in the business of the store, &c., as he had done under the will; which he accordingly did until Charles was of age.

The property in question was received by Greenleaf in discharge of debts due for goods at the store, and there being balances, over and above said debts, those balances were paid in goods from the store, or money which had been received on the sale of goods. Part of said property was thus received before the plaintiff was of age, and part afterwards.

Said Greenleaf testified, that he purchased the property as agent of the owners of the stock of goods in the store, and for their benefit, and that during the time he carried on the business he took out of said store, for his own use, annually, to the amount of his share of the profits, as he believed; but no settlement had ever been made in regard to said profits.

It was in evidence, that one O. P. Greenleaf, at the time of the sale of said property by the defendant, bid off the same at sums much beyond its value, and that said sums were paid, and the execution discharged; and there was evidence tending to prove that he acted as the agent of the plaintiff in the purchase, and that the money was paid by the plaintiff.

The court instructed the jury, that if said articles were paid for out of said stock in trade, under the circumstances of the case, they thereby became the property of the plaintiff, and of said Charles Gibson, if they at the time were the exclusive owners of the stock; and that by the provi-

sions of the will, and the doings of said Greenleaf under the same, he did not become interested and a part owner of said stock in trade, if he had taken out his full share of the profits as they accrued.

The court farther charged the jury, that if they were satisfied that said O. P. Greenleaf acted as agent of the plaintiff, and that the amount at which said articles were struck off was paid by the plaintiff, they must, if they found for the plaintiff, assess the damages at one half of the amount so paid by him, with interest.

The jury having found a verdict for the plaintiff, the defendant excepted to the instructions of the court, and moved for a new trial.

*Farley* and *Walker*, for the defendant. The first question is, whether under the will, and the agreement made by the plaintiff, Greenleaf did not become a partner?

Where one furnishes capital, and the other services, and they share the profits, they are partners.

If one is to have half the profits, and there is an increase, he becomes interested in the property itself. However minute the interest may be, there is an interest in the goods. If on adjustment of the concerns it is found that he has not received all he was to receive, then he is interested in the stock.

Greenleaf had the legal title, and by his right to a portion of the profits became a partner, and liable as such to the debts. The Gibsons were infants, and might avoid any liability.

If Greenleaf was not a partner, the defendant is entitled to recover on another ground. The purchase of these articles was not on account of the store. They were not of a kind which he was authorized to purchase for it. These goods, then, upon the purchase became the property of Greenleaf, and he was accountable to the Gibsons for the amount.

As to the rule of damages—That the plaintiff gave more for the property than it was worth, was his folly. The defendant is not bound because the plaintiff saw fit to give more for property than its value.

*E. Parker*, for the plaintiff, contended, that a trustee cannot be a partner with a *cestui que trust :* An executor or guardian cannot be so : That by the will of Gibson, Greenleaf was constituted a trustee, with a portion of the profits, as a compensation for his services, but was not accountable for losses : That nothing like a partnership was contemplated by the will, or could have been constituted in that mode under its provisions : That the authority given to the other executors to take the property out of Greenleaf's hands, in a certain event, showed that he had no interest,—and that the power of attorney from the plaintiff, after he became of age, constituted him the plaintiff's agent, but gave him no greater interest than he had before.

The plaintiff takes, by the verdict, for his property, no more than the defendant received for it.

PARKER, J. It seems that a partnership may be continued after the death of one of the partners, when such is the express agreement. 9 *Ves.* 501, *Balmain* vs. *Stone ; Gow on Part.*, 271.

It is evident that such partnership must be of a limited character, and it is doubtful if it can be termed a partnership where the business is carried on by a single survivor. It can only extend so far as to authorize such survivor to employ the funds, and continue the trade, and perhaps in some cases to charge the estate of the deceased partner ; but cannot authorize him to pledge the individual credit of the representatives, or heirs of the deceased partner, without their consent.

If, on provision for that purpose, the executor, or heir elected to come in, and undertake the management jointly with

the survivor, such act would be the foundation of a personal liability ; but, otherwise, the debts contracted after the decease could only be a charge upon the fund and the personal credit of the survivor, unless provision was made for charging the other estate. *7 Conn. Rep.* 307, *Pitkin* vs. *Pitkin ;* 10 *Ves.* 110, *exparte Garland ;* 1 *Mau. & Sel.* 412, *Wightman* vs. *Townroe ;* 8 *Conn. R.* 584, *Alsop* vs. *Mather.*

If here had been a partnership, and Greenleaf by the will became interested as a partner, this defence could not be maintained.

As a partner, all his interest in this case would be a portion of the profits of the trade. And on an execution against him personally, if a levy could be made upon any partnership interest, it could only be upon his right as a partner— that is, his interest in such profits.

The specific property of a partnership cannot be lawfully taken and sold to satisfy the private debt of one of the partners. His creditor can have no greater right than the debtor himself has individually, which is a right to a share of the surplus.

This is the necessary result of the doctrine, that the partnership property is a fund in the first place for the payment of the partnership debts, and that the interest of an individual partner is only his share of the surplus. *Vide the cases collected,* 5 *N. H. Rep.* 192, 193, 250 ; 9 *Conn. Rep.* 410.

There are difficulties in selling the interest of one partner upon an execution. Courts of equity first direct an account, which courts of law cannot do ; and if the interest of one partner may be sold upon an execution at law, it must be left to an account afterwards. *Gow on Partnership,* 246 *et seq.* 254. And a question may arise in such case, whether the sale operates as a dissolution of the partnership before the time limited by the articles of copartnership, or whether the other partners are authorized to carry on the trade and account at the expiration of the term.

If the sheriff can sell only the interest of the partner, and not the goods, he must be liable if he make actual seizure of the specific property, either to the partnership or the other partners. 2 *Johns.* 280, *Wilson* vs. *Conine.* Especially if he sell the whole, as in this case. 1 *Gall. Rep.* 370, *Lyndon* vs. *Gorham and Trustee;* 15 *Mass. Rep.* 82, *Melville* vs. *Brown.*

There can be no objection to an action by one of the partners alone, if abatement is not pleaded, it being *ex delicto.* 1 *Chitty's Pl.* 53.

And if the partners could not join in an action, upon the ground that the one who was debtor could not object, (which is not admitted) it would seem that the other partners must have a right to recover the whole property, for the use of the partnership, for they are liable for the whole debts, and the entire property may be required to discharge them. They might certainly recover the value of their shares. If, therefore, this was a case of partnership, as has been contended, there would seem to be no objection to the recovery of the plaintiff, to the extent of his share.

But we are not required at this time to settle the principles of this somewhat difficult branch of administering the law.

There was here no partnership, so far as the rights of the parties in this case are concerned. None existed before the decease of John Gibson, nor does it appear to have been his intention to create one. It is difficult to perceive how he could have done it, had he attempted it—how it could have been in his power to make a partnership between Greenleaf and his children, who were minors.

He might bequeath his property under such charges and limitations, and subject to such trusts, as he pleased. He might have made the fund subject to debts contracted by the trustee in managing it, and perhaps have charged his other estate, had he elected so to do. He might, with the assent of Greenleaf, have so ordered it that Greenleaf in

contracting debts on account of the concern, would have made himself liable to the creditors, as if he had been a partner. Possibly that may have been the case under this trust.

But Greenleaf very clearly was not a partner as respects his own private creditors, in such a manner as to give them a right to interfere with the property held in trust.

The provision in the will constituted a trust, and provided for the compensation of the trustee, by giving him, instead of a sum certain, a share of the profits. He was entitled to nothing except the share of the profits; and it might be questionable whether he could legally take that, even as compensation, until an account was taken, and the matter adjusted by those who owned the property. He had a right to receive, or retain in his hands upon settlement, to the amount of one half of the profits, as for a debt due to himself, for managing and superintending the trust.

That no interest in the property was vested in him, is farther apparent from the clause providing that the executors in a certain event might withdraw the whole property from his possession.

The power of attorney from the plaintiff, authorizing Greenleaf to proceed as he had done under the will, does not alter the case. He was still acting as agent and trustee.

If any question was made at the trial, whether the articles in controversy were originally purchased by D. Greenleaf on his own account, or in such manner that they became his exclusive property, the verdict of the jury has negatived such a position, as a matter of fact, and there is nothing in the case to show that they became so by matter of law. It might have been necessary to take them in payment of the debts.

The only other question is respecting the damages. The direction of the court, in the terms in which it was expressed, cannot be supported. The plaintiff is entitled to no more because he purchased and gave a certain price, than

he would have been had any other person purchased. He received by the goods a compensation for the price he paid for them. But he is entitled to one half of the value of the goods; and we see no objection to the result. The value of the goods was the amount they were worth, and the defendant cannot complain if that value is assessed by the amount he received upon the sale. He is not entitled to make a profit on them, and the plaintiff may claim to the extent that the direction authorized, though not for the reason given. The error in the direction, therefore, furnishes no ground for a new trial.

*Judgment on the verdict.*