## DOW *vs.* SAYWARD.

The statute of limitations constitutes no bar to the maintenance of an action, where the defendant has resided without this state, unless there has been property of the defendant within the state, during the full term of six years, which might have been attached by the common and ordinary process of law.

Where property has been holden within this state for that term of time, in order to take the case out of the statute there must have been such notoriety to this ownership that the creditor might, with common and ordinary diligence, have secured his debt, or by attachment have given jurisdiction to the court, so that judgment could have been had, and his claim preserved in force.

Stage companies are ordinarily associations, with liabilities as partners ; and the share of any individual member in the surplus of the company's property may be holden by attachment at law, so as to avail to the benefit of his creditors.

ASSUMPSIT, on a note for $111·34, dated June 7th, 1826, made by the defendant, and drawn payable to the plaintiff's intestate.

The writ was dated on the 22d of July, 1839. Plea, the general issue and statute of limitations. The signature of the note was duly proved.

It appeared in evidence that the intestate, Jabez Dow, died on the 9th day of January, 1839, and that he resided at Do-

ver. The defendant had never been an inhabitant of this state, but resided at Alfred, in the state of Maine.

To rebut the effect of his absence from the state, which would deprive him of any right to avail himself of the statute of limitations, as a bar to the plaintiff's claim, the defendant proposed to show that he had property within the state liable to attachment, for the term of six years prior to the intestate's decease, that might have been levied upon by ordinary process of law, for the payment of the plaintiff's claim.

It appeared that on the 2d day of July, 1825, Richard Philpot conveyed to the defendant a tract of woodland, not enclosed nor cultivated, situate in this state, by a deed which was not acknowledged, but which was recorded on the 12th of April, 1836. When the deed was delivered it was stated by the parties that the defendant was to take the conveyance, for the purpose of selling the land and accounting for the proceeds to Philpot. The defendant gave his note for the consideration expressed in the deed, being $2500.

While the defendant held the title, neither he nor Philpot did any thing to the land. On the 2d day of June, 1827, Philpot sued the note and attached the land, and on the 24th of August, 1827, the land was set off to him in satisfaction of the judgment recovered on the note.

The defendant also offered evidence that on the 9th of March, 1833, he and one William G. Conant purchased one quarter part of a line of stages running from Dover to Alfred, at a consideration of $303·12, and that within one year from that date he purchased Conant's right in the same. He has continued to own this interest in the stage line from that time to the present. The stage property at the time of purchase consisted of nine horses and harnesses, and a stage coach and sleigh. Four horses and the coach were kept at Dover, and were there every day in the year, except being temporarily absent from evening till morning three days in the week.

The property in the line was taxed atDover to the company, and its concerns were managed by an agent, who was part owner, and who paid their proportions of the dividends to the other owners. The bills were made out in the name of the Dover and Alfred Stage Company, and it was generally known by that name. The stage stopped at Alfred, at a public house kept by the defendant; and it was commonly known and spoken of among those persons concerned in staging at Dover, that the defendant owned a share of the property. The intestate lived about sixty or eighty rods from the house in Dover where the stage stopped, and was often at the house.

It was admitted that the administrator did not know that the defendant owned any portion of the stage property, until a day or two prior to the commencement of this suit.

In a letter written to the defendant by the administrator, soon after the intestate's decease, he stated that the note was outlawed, but he had not such an opinion of him as to suppose it would make any difference.

A verdict was taken for the defendant on the foregoing case, subject to be set aside and a new trial granted, or judgment to be rendered thereon, as the court should direct.

*Dow*, of Mass., (with whom was *Christie*,) for the plaintiff. The defendant is not shown to be the owner of either real or personal estate, or both, for the term of six years from the time when the cause of action accrued, to the death of the intestate, that could be attached by the common and ordinary process of law. The title to the real estate was defective ; or, if not so, it was placed on record without any acknowledgment, and could not constitute a legal notice to the deceased. 6 *N. H. Rep.* 250, *Montgomery* vs. *Dorion* ; 6 *N. H. Rep.* 557, *Sissons* vs. *Bicknell.*

The stage property owned by him was owned jointly with others ; was partnership property, and not liable to a specific attachment by the common and ordinary process of law. 7 *N. H. Rep.* 352, *Gibson* vs. *Stevens.*

The lapse of time betwixt the alleged ownership of these descriptions of property, was nearly six years, and the periods are too remote to be attached together.

The property was not, in either case, in such open and visible possession as to give any indication that the defendant owned the property. This should be fully shown, in order to make out an exception under the statute. 16 *Pick.* 359, *Little* vs. *Blunt.*

*W. A. Marston,* for the defendant. The statute has not defined the species of property or estate of which the defendant must be the owner, in order, after the requisite time, to relieve him from his liability. It is only necessary that the property be attachable. If there is any property within reach of process, so that the court can take jurisdiction of the case, and render judgment on the claim, it seems to be all that the statute contemplates.

The real estate was attachable by common and ordinary process of law, until the levy on execution. The previous attachment was no bar to a subsequent one. The attachment might not be available in the end, but at the same time it would be property liable and open to attachment.

The property in the stage company was not a partnership interest. It was a joint stock company, governed by different rules and principles from an ordinary partnership. It is similar to the joint ownership of ships, which is a tenancy in common merely. 1 *Johns.* 106, *United Insur. Company* vs. *Scott.* It has been repeatedly holden that in ordinary stage companies the proprietors are not partners. 2 *Taunt.* 43, *Barton* vs. *Hanson;* 9 *Johns.* 307, *Wetmore* vs. *Baker;* 14 *Pick.* 280, *Chandler* vs. *Brainard;* 11 *Pick.* 450.

UPHAM, J. The section of the act under which the question before us arises, has not received a judicial construction in this state, except in this particular—that the statute of limitations constitutes no bar to the maintenance

of an action, where the defendant has resided without the state, unless there has been property of the defendant within the state during the full term of six years, which might have been attached " by the common and ordinary process of law."    6 *N. H. Rep. 557, Sissons* vs. *Bicknell.*

There has been no decision by our courts as to what constitutes an attachment " by the common and ordinary process of law," as defined in the statute.    This question is here raised, on the ground that a portion of the property owned by the defendant was partnership property, and that, if partnership property, it could not be attached by common process of attachment.    Both these positions are contested.

It is contended that joint proprietors in a stage line are not partners ; and various authorities have been cited to this point.    It is very clear, however, that there may be a partnership in this business as well as any other ; and where the general ingredients of a partnership—a common ownership, with a communion of profit and loss—enter into the arrangement made by the parties, it will be difficult to distinguish it from any ordinary partnership.

There are various private companies that associate together under peculiar articles of agreement ; and, where these terms of agreement are known, the power of a member of the company would be limited in conformity to them. It would be a fraud upon the rest of the company to enter into an agreement with one of the members, in violation of what was known to be the common understanding of the company.

A partner is presumed to have authority to bind the firm, and to act as an authorized agent for the rest ; but this presumption has no operation, where a party, who would rely upon it, has received express notice to the contrary.    Thus, where four persons are partners in a coach concern, but one, by agreement, provides the coach, at a certain rate per mile, he alone is responsible for repairs done to the coach by a person cognizant of this arrangement.    Or where partners

in a stage line confide the entire management of the property to a general agent, who alone has power to pledge the company's credit, and this is fully known and understood, his acts can alone bind the firm.   " At the same time, the body of the proprietors are jointly liable to a passenger, or a person who sends goods by their conveyance ; and they are equally responsible for any damage that may be sustained through the negligence of a servant engaged by any one of them, whilst he is in the prosecution of the joint business." *Gow on Partnership* 164 ; 2 *Taunt.* 49, *Barton* vs. *Hanson ;* 9 *Johns.* 307, *Wetmore* vs. *Baker & a. ;* 1 *Pick.* 50, *Dwight* vs. *Brewster ;* 5 *Barn. & Cres.* 505, *Helsby & al.* vs. *Mears.*   They, in fact, are partners.

Stage coach proprietors are usually partners ; but it is not unfrequently the case that the terms of association and arrangement are such as to vary their mode of business and liabilities, where they are known, in some respects from that of an ordinary partnership.

Admitting the Dover and Alfred Stage Company to be a partnership association, the question arises whether the defendant's interest in that property could be taken by the common and ordinary process of attachment.

In the case of *Gibson* vs. *Stevens,* 7 *N. H. Rep.* 352, it was held that partnership property could not be seized and sold upon execution, on a debt against one of the partners, and that the creditor could have only the right of his debtor, which is an interest in the surplus, after paying the partnership debts.   But it is not there decided that this interest in the partnership cannot be taken by attachment.

In the case of *Morrison* vs. *Blodgett & a.,* 8 *N. H. Rep.* 238, is a very elaborate examination of this question by Mr. Chief Justice Parker, and the opinion of the court is strongly intimated that a general attachment of the interest of a partner in a firm, may be made ; though it is suggested that in order to make the attachment available, by obtaining a true knowledge of the extent of the partnership interest, it might

be expedient or necessary to summon the other parties as trustees. We are unable now to see any better course than was there suggested. There seems to be no good reason for giving up the process of attachment at law in such cases, as it would probably in this mode be rendered equally as effectual and prompt as any other means of securing the interest of the debtor that might be devised. If a process in chancery should be deemed more effectual, still it might be desirable also to retain a right of attachment at law. *See, also, Page* vs. *Carpenter*, 10 *N. H. Rep.* 77.

But there is a difficulty beyond this, in this case, that we think will require a new trial of the action. There is not sufficient evidence of an open, visible possession of the property alleged to be owned by the defendant, as necessarily to constitute, within the meaning of the act, a bar to the operation of the statute of limitations.

The mere ownership of property we do not regard as sufficient to take the case out of the statute. There must be such notoriety to this ownership that the creditor, with ordinary care and diligence, might be aware of such ownership; and either secure his debt by attachment, or in this way give jurisdiction to the court, so that judgment might be recovered and his claim be perpetuated.

The evidence offered in this case tends to show a notoriety of this description, but is not conclusive. It should be submitted to a jury to determine this fact, which, if found either way, would probably be decisive of this case.

*Verdict set aside and a new trial granted.*