## ISRAEL TRASK *versus* JESSE BOWERS.

A leased a farm and certain cattle to B, and it was agreed that B should deliver to A half the produce of the farm, and half the increase of the cattle, and at the expiration of the term deliver A cattle of equal value. B having continued upon the farm several years, and become indebted to A, sold to the latter all his interest in the cattle on the farm to pay the debt, and agreed to manage the farm for the future as the servant of A. This sale and agreement were made in secret, and B continued to live upon the farm and managed all the property as before, keeping his situation a secret, lest his creditors should be alarmed ; it was held that B's possession of the property in this manner after the sale, was conclusive evidence of a secret trust attending the sale which rendered it void as to creditors.

TROVER for seventeen horned cattle and two horses. The cause was tried here at February term, 1827, upon the general issue, when the plaintiff, to prove the property in the cattle to be in himself, read in evidence an indenture dated the 29th October, 1819, whereby he leased to one T. Tilton, a farm for one year, and such further time as both parties should please.

In the lease, reference was made to a schedule annexed in which it was stated that six oxen, three cows, one horse, and certain other property were delivered to Tilton, according to the tenor and conditions of the lease. And it was stipulated in the lease that Tilton should deliver to the plaintiff, in due season, one half of the produce of the farm and stock and one half of the increase of the flocks and herds, and swine and pork, with one half of the income, and that he should, at the termination

of the lease, deliver to the plaintiff the farming utensils and tools mentioned in the schedule, and stock of an equal amount in number, quality, quantity, and age with those mentioned in the schedule.

Tilton continued to occupy the farm and kept a tavern in the house thereon until after the time of the attachment hereinafter mentioned. He sold the horse and cattle and bought others and continued selling and exchanging the horses and cattle, (some of which were bought by the plaintiff) as is common for farmers to do with their own stock of cattle, representing the same to be his own property, and dealing with the same as his own.

The plaintiff read in evidence an endorsement upon the said indenture as follows :—

*Goffstown*, October 1, 1823.

It is mutually agreed this day, between the parties, that this lease, at the expiration of the year thereof, viz. the 29th of the present month, shall conclude and terminate and be no longer in force.

In testimony we have hereto set our hands,

I. TRASK,
T. TILTON.

The plaintiff also produced an account stated between him and Tilton on the 2d October, 1823, in which Tilton gave him credit, for sundry articles amounting in the whole to $145, 99, and charged the plaintiff with Tilton's half of eight steers, five heifers, six calves, one colt, and some swine valued at $108, and with his note for the balance, being $37, 99.

The defendant, who was a deputy sheriff, attached the property mentioned in the plaintiff's writ as the goods of Tilton, on the 12th of April, 1824, by virtue of a writ of attachment in favor of Kendrick and Mc Gaw, and afterwards sold the same upon an execution duly issued in that suit.

It did not appear that any of the cattle mentioned in the declaration were the progeny of the cows mentioned

in the schedule.    It appeared that Tilton was before, and at the time of the attachment, deeply indebted and unable to pay his debts, and that among others he owed the plaintiff several hundred dollars.

It further appeared that Tilton, after the 2d October, 1823, and before the said attachment, exchanged one yoke of steers on the farm for another yoke, and offered to sell and continued to keep tavern ; and that no change or alteration of his right to the property in question was known or reported to have taken place until after the said attachment.    Sundry witnesses living in his immeate neighborhood testified that they credited Tilton by reason of their belief of his continuing the owner of that property.

Tilton was introduced as a witness by the plaintiff, and testified that the endorsement on the indenture, and the statement of accounts, was made at the time they purported to be made ; and that after the 2d October, 1823, he lived on the farm as the hired servant of the plaintiff.    He further stated that no person was present at the time of the statement of the accounts and endorsement of the lease, and that he did not tell of the transaction, but kept it secret, until after the attachment, through fear that his creditors might be alarmed at it, and attach his property ; that his sales and exchanges of the cattle and horses were made in consequence of a general direction by the plaintiff, and that the exchange made after the 2d October, 1823, was made by the special direction of the plaintiff.

It appeared that at the time of the attachment, and also at the time of the sale, the plaintiff told the defendant that he was the sole owner of the goods in question, and forbade the defendant to intermeddle with it.

The jury found for the plaintiff, and being enquired of by the court, said that they had so found under a belief that the statement of accounts between the plaintiff and Tilton, vested the sole property in the cattle therein

mentioned in the plaintiff, and entitled him to recover. And thereupon the defendant moved the court to set aside the verdict as being against both law and evidence.

*Sullivan*, for the plaintiff.

*Mason*, for the defendant.

RICHARDSON, C. J. The facts of this case are shortly these. On the 29th October, 1819, the plaintiff leased to Tilton a farm and certain cattle, under a contract that Tilton should deliver to the plaintiff one half of the produce of the farm, and of the increase of the cattle, and at the end of the term return cattle of equal value. Tilton continued to occupy the farm, sold the cattle and bought others with the assent of the plaintiff, and continued selling and exchanging the stock upon the farm, representing the same to be his own, and dealing with it as such until the 2d October, 1823, when, being indebted to the plaintiff, he sold to him his interest in the stock upon the farm to pay the debt, and it was agreed that the lease should expire on the 29th of October, 1823. This sale and agreement was made in secret. Tilton was then employed as the servant of the plaintiff, and carried on the farm, and with the assent of the plaintiff exchanged one yoke of oxen for another, and offered to sell others, and no change of his right in the cattle was known in the neighborhood, and Tilton kept all secret lest his creditors might be alarmed. But at the time the attachment was made by the defendant the plaintiff gave him notice that the cattle were his sole property.

The question is, whether the sale by Tilton of his interest in the cattle to the plaintiff, on the 2d October, 1823, must, under the circumstances, be considered as fraudulent with respect to his creditors ? If it must in law be so considered, the verdict is against both law and evidence, and there must be a new trial, but otherwise, the plaintiff is entitled to judgment on the verdict.

It must now be considered as settled law in this state that a sale of goods by a person in debt in order to be considered as *bona fide*, with respect to creditors, must be made without any trust whatever either express or implied. The grounds and reasons of this rule of law are so fully stated in the case of *Coburn* v. *Pickering*, 3 N. H. Rep. 415, that it is unnecesary to repeat them again in this case.

Was there then a secret trust attending this sale?

It was decided in the case just mentioned that if a vender of chattels retain possession after an absolute sale, this is always *prima facie*, and if unexplained, conclusive evidence of a secret trust.

In the case before us the goods were left in the possession of the vender and the question is, whether the explanation given is in law sufficient to rebut the presumption of a trust, which is raised by the possession?

The explanation is, that the plaintiff owned the farm, that the lease was terminated by agreement, and that Tilton was employed by the plaintiff as a servant to manage the property. Is this a sufficient explanation? If all this had been done openly and without any secresy, and Tilton's real situation in relation to the property had been made known to the neighborhood, we are not prepared to say that this explanation would not have been a good answer to the imputation of fraud in the transaction. When the lease was ended, and the business settled, there seems to be no good reason why the plaintiff might not have employed Tilton as his servant as well as any other person, provided he so employed him as not to give him a false credit, and thus mislead and deceive his creditors.

But all was done in secresy. No person except the parties to it was present at the settlement. Tilton was not only left in possession of the property, but in possession selling and offering to sell " *with the special direction of the plaintiff*," precisely as he had done before the sale.

No one in the neighborhood was aware of any change in the property, and Tilton, although his property was gone in this way, retained his credit.

No doubt can be entertained that this permission of the plaintiff to Tilton to remain thus in possession, and thus retain his credit, was a trust attending the sale which must in law be considered as a fraud, and render the sale void with respect to creditors.

The case does not state that the plaintiff agreed to keep the sale secret. But it was in fact kept secret; and it was so kept by Tilton, his agent, and servant with a view to deceive his creditors. The plaintiff made the bargain with Tilton in secret, and did not afterwards make it public. It was in fact kept secret. It must then be presumed to have been kept so with his assent.

Such a sale cannot be deemed *bona fide* with respect to creditors. When goods are sold by a debtor, there must be a *bona fide* substantial change of possession. It has been held not to be enough, that the vendee puts a person into possession jointly with the vender. 1 Camp. 332, *Wordall* v. *Smith*; 3 N. H. Rep. 415.

In this case the possession of Tilton may, without doubt, be for some purposes considered as the possession of the plaintiff. But with respect to the creditors of Tilton, from whom his real situation was kept a secret, and who were deceived and misled by his having the management of the property, Tilton must be considered as having the possession; and as having it in such a manner and under such circumstances as render it conclusive evidence of a secret trust, which renders the sale of the goods to the plaintiff void.

The verdict in this case, is therefore contrary to law, and there must be

*A new trial granted.*