## MORRISON *vs.* BLODGETT & a.

A sheriff, upon a demand against one partner, for his private debt, cannot seize the goods of the partnership, and exclude the other partners from the possession.

Where a person purchased the interest of one partner in the goods, &c., of the partnership, agreeing to indemnify him from the partnership debts, and formed a partnership with the other partner ; and an officer, having a writ against the first partnership, attached the goods, and took the receipt of the individuals composing the new partnership for them, and made a return of an attachment : it was *held*, in an action upon the receipt, that the defendants could not contest its validity upon the ground that the property of the new partnership was not liable to attachment upon a demand which was against but one of the partners.

Where an officer makes a nominal attachment of goods, receiving the receipt of a third person for an amount sufficient to satisfy the demand, and returns an attachment upon the writ, it is not competent for the receipter to contest the attachment, or set up a want of consideration.

ASSUMPSIT, upon a receipt signed by the defendants, Blodgett and Buffum, dated April 21, 1834, in substance as follows, viz. Received of William Morrison, D. Sheriff, all the goods in our store, of various kinds, all of the value of four hundred dollars, which we jointly and severally promise to keep safe, and deliver them safe and free of expense to said Morrison, or any other proper officer, on demand, or pay him four hundred dollars.

It appeared, that on said 21st of April, the plaintiff, having a writ of attachment in favor of H. Gassett & Co., against one Joseph Dickinson and the said Blodgett, as partners, under the firm of Dickinson and Blodgett, attached " four hundred dollars worth of goods," as the property of said Dickinson and Blodgett, and took the above receipt, upon said attachment, without taking said goods into his possession, or removing the same. Said writ was duly entered, and judgment was rendered for said Gassett & Co., and execution delivered to the plaintiff within thirty days, who duly demanded the goods or money.

It further appeared, that on the 10th of February, 1834, the goods in the store mentioned in said receipt were owned by said firm of Dickinson and Blodgett—that on said day Dickinson sold and transferred to the defendant Buffum all his interest in the goods then in said store, and in all other property and demands belonging to said firm—that Buffum, on said sale and transfer, agreed to pay said Dickinson's share of all the debts due from the firm of Dickinson & Blodgett, and indemnify Dickinson against the same—and that Blodgett & Buffum afterwards continued business in said store, as partners, up to, and after, the time of said attachment.

*Bell*, for the defendants, contended that at the time of the service of the writ Dickinson had nothing in the goods. The defendants then conducted business as partners, and the goods of the latter firm could not be attached on the debt of Dickinson and Blodgett. An officer must attach what he can sell. He cannot be justified in seizing partnership property on a debt of an individual partner, because he cannot sell the effects. He could sell nothing but the right of Blodgett in the surplus after paying the debts of the firm of Blodgett & Buffum, and he could, therefore, attach nothing else. The attachment did not follow the right to attach, and was invalid, and there was therefore no consideration for any promise either to deliver goods, or pay money.

*Wilcox*, for the plaintiff. The plaintiff having shown the defendants' receipt for goods valued at $400,—and their promise to re-deliver them on demand, or to pay $400 in money, and having, also, shewn that, on demand made, the defendants refused to deliver either the goods or money, is of course entitled to retain his verdict, unless the matter proved on the trial justify or excuse the non-performance of the contract made by the defendants.

The defendants attempt to excuse themselves on the

ground that the property described in the receipt was the property of the defendants, Blodgett and Buffum—that the process was against Blodgett and one Dickinson—that the property could not be taken on that process, and therefore the receipt was without consideration and void.

It becomes important, therefore, to consider the rights and liabilities of receipters, so far as the same have been settled by adjudications.

A receipter cannot object the want of a sufficient legal attachment, or of delivery to him of the goods, after having acknowledged the same in writing, in consequence of which the officer has made himself responsible to the creditor for the goods. *Jewett* vs. *Torrey*, 11 *Mass.* 219; *Lyman* vs. *Lyman & a.*, 11 *Mass.* 317; *Bridge* vs. *Wyman & a.*, 14 *Mass.* 190; 4 *Vermont Rep.* 504; 2 *Vermont Rep.* 212; *Story on Bailment* 95.

But when the officer has wrongfully attached the goods of a third person, and delivered them to the receipter, he may defend by shewing a delivery to the true owner. *Learned* vs. *Bryant*, 13 *Mass.* 224; *Story on Bailment* 98. Yet in such case, if the property has gone back into the possession of the debtor, and been used by him, the receipter is estopped to deny the right of the sheriff, or to show a title in a third person. It is only when the goods have been taken from him by paramount title, that he can avail himself of that title to defeat the claim of the sheriff. *Phillips & a.* vs. *Hall & a.*, 8 *Wend.* 610.

And it seems to be well settled that a receipter cannot defend himself against an action on the receipt by shewing that the property attached was his at the time of the attachment. After having been voluntarily, and without any fraud or mistake, constituted the bailee of the sheriff—after having thus admitted in writing the sheriff's title to the property, and promised to re-deliver it on demand, it would be repugnant to suffer him to exonerate himself from liability on that contract by asserting his title to the property. *Johns*

vs. *Church,* 12 *Pick.* 561 ; *Robinson* vs. *Mansfield,* 13 <span style="float:right">Morrison<br>*vs.*<br>Blodgett et al.</span>
*Pick.* 139.   A person who has given a certificate, acknow-
ledging that he has certain goods in his possession to keep
for another on storage, is estopped to say that the goods be-
long to him.   *Chapman* vs. *Searle,* 3 *Pick.* 38.

There are other cases in the law analogous in principle.
Thus a tenant cannot dispute the title of his landlord,
although if he be evicted by paramount title he may shew
it ; and a man may become tenant of his own land by such
estoppel.   2 *Stark. Ev.* 533 ; 3 *do.* 1518 ; *Binney* vs. *Clap-*
*ham & a.,* 5 *Pick.* 127.   In *Wilson* vs. *Ld. Townsend,* 2
*Ves. Jr.,* 596, the Lord Chancellor said, " a man may take
a lease of his own estate, and no court of justice will per-
mit him to set up his title against his landlord."—One mak-
ing a contract to buy land, and taking possession under it,
in ejectment by the vendor, the vendee is absolutely estopped
from shewing title in himself.   *Jackson ex. dem. Livings-*
*ton* vs. *Walker,* 7 *Cowen* 637.   See, also, 6 *East* 401 ;
*Sayles* vs. *Smith,* 12 *Wendell* 57.

If these defendants had been third persons, and the
property had been theirs, and not liable at all to attachment,
they could not set up their title, as a bar to an action on the
receipt, without at least shewing fraud or mistake, which
are not here pretended.

But these goods were liable to attachment on this debt.
In the first place, Blodgett, one of the debtors, was a part
owner of the goods, and his interest was liable to attach-
ment.   Formerly, at law, the sheriff sold the debtor's
share of the goods, without any account of his real interest.
Equity interfered in favor of the other partner, and held
that he had, as against the vendee in such sale, a lien on
the effects, for the payment of all partnership debts and
other charges thereon.   Courts of law have adopted the
same principle, and they have decided that an attachment
of partnership effects on a debt against the firm has the

preference over a prior attachment of the same effects on the separate debt of one partner. *Tappan* vs. *Blaisdell*, 5 *N. H. Rep.* 192.

It is agreed on all hands, that the interest of the individual partner may be taken, and held for his separate debt. The authorities are numerous and uniform to this effect, and no decision at law or in equity conflicts with it. 6 *Mass.* 242; 11 *do.* 242; 16 *Johns. Rep.* 106; 12 *Wendell* 131; 3 *B. & P.* 288. This is, too, in strict accordance with the general policy of the common law, which subjects all of a person's property, excepting a few articles necessary for upholding life, to the claims of his creditors. But how is this interest to be seized? When we admit the right of attachment, it follows, *ex vi termini*, that the sheriff has in some way the power to acquire a lien which he may enforce. Whether he may remove the effects themselves, or may exact of all the partners an obligation to account to him for the interest of the debtor, or whether he can merely put his servant in possession of the debtor's share jointly with the other partners, to watch over and guard his lien, we need not now examine. The last named course is recommended in *Parker* vs. *Pistor*, 3 *B. & P.* 288.

In *Scrugham & a.* vs. *Carter & a.* 12 *Wendell* 131, this matter came directly in question, the sheriff having actually removed the partnership effects to a place of safe deposit, and it was held that replevin would not lie against the sheriff.

In *Moody* vs. *Payne*, 2 *Johns. Ch. Rep.* 548, Chancellor Kent refused an injunction to restrain a sale by the sheriff, saying, that no harm is done, by the sale, to the other partners. Judge Story, in his treatise on Equity, *I. Vol. page* 628, comes to a conclusion directly the reverse of the Chancellor, in which he is sustained by the opinion of C. J. Savage, in Scrugham vs. Carter, and he says it may be of great importance to the other partners whether a sale takes place or not. "For," he continues, "it may be extremely

"difficult to follow the property into the hands of various "vendees; and the lien of the partners may perhaps be dis- "placed, or other equities arise by intermediate *bona fide* "sales of the property by the vendees to purchasers without "notice; and the partners may have to sustain all the "chances of any supervening insolvencies of the immediate "vendees." All which is idle talk, if the sheriff, or his vendee, have no right to take the effects. *See, also, Phillips and a.* vs. *Bridge,* 11 *Mass.* 242.

In the case at bar, the defendants submitted to the attachment, and became responsible to the plaintiff, by their receipt, to a fixed amount. That is an express and agreed admission that Blodgett had an interest to that amount, and conclusive on the defendants.

But, secondly, this specific property was liable for this very debt, as against these defendants. The goods were formerly the property of Dickinson and Blodgett, the judgment debtors. Dickinson sold all his interest in them, and in all other partnership effects, to Buffum, one of the defendants, and Buffum agreed to pay Dickinson's share of the debts due from Dickinson & Blodgett, including of course the debt in question.

As the property of Dickinson & Blodgett, these goods were liable to attachment. What passed by the sale to Buffum? Nothing but what remained after satisfying the claims of the partnership creditors and of the other partner, Blodgett. Buffum acquired precisely the same interest, and no more, that he would have acquired had Dickinson's interest been taken and sold on an execution against him alone, and Buffum became the purchaser. This was all Dickinson could sell. 3 *Kent's Com.* 37, 2d ed.; *Nicholl* vs. *Mumford,* 4 *Johns. Ch. Rep.* 525; *Mumford* vs. *McKay,* 8 *Wendell* 442; 1 *Story's Equity* 629; *Marquand* vs. *N. Y. Manufacturing Comp.* 17 *Johns.* 525; *Pierce* vs. *Jackson,* 6 *Mass.* 243; *Crane* vs. *French,* 1 *Wendell* 311; *Tappan* vs. *Blaisdell, ubi supra.* Such was the legal effect, and such the express agreement.

The security taken is on the face of it legal and effective. It is obligatory on the defendants. They offer to show, by way of discharge, that they have in their hands the fund properly chargeable with the debt, and that they are the very persons, and the only persons, who ought to pay it. It would be very odd that such evidence should in fact discharge them.

*Goodall* and *Woods*, on the same side.

PARKER, J.   The first question which has arisen in this case, and one which it may be well to have settled, is whether a sheriff may seize and hold partnership property, by attachment, or on execution, upon a demand against one of the partners.

The practice, which formerly prevailed, of selling on execution an undivided interest of the debtor partner, in such specific portion of the partnership property as the creditor saw fit to seize, it seems to be conceded cannot be supported under the views, now very generally taken, of the rights and liabilities of partnership creditors and partners. But in *Scrugham* vs. *Carter*, 12 *Wend.* 131, where the sheriff had seized and removed the goods of a partnership, upon an execution against one of the partners, it was held that an action of replevin could not be maintained against him, at the suit of the other partners, or those standing in their stead. One of the reasons suggested for this, is, that each partner is entitled to the possession of the partnership property ; and if one excludes the other, no action at law lies—the remedy is in equity."—Whether replevin will lie, or not, it must not be overlooked that the right of one partner to the possession, is, to hold for the purposes of the partnership, and the benefit of the whole, and not a right to sever any specific portion, and hold it for his own use, without the consent of the other partners, and against their interest. If it be true, that in case one partner does take a

portion of the partnership property, and hold it against the other partners, no action of trespass or replevin can be maintained against him, it will not prove that such partner has a legal right so to do ; but only, that by reason of the general control given him over the goods, by the constitution of the partnership, such remedy at law cannot be sustained for a violation of his duty as a partner. This, however, will not show that an action might not well be maintained against any third person who should seize the goods on execution, for the debt of an individual partner, and exclude the other partners from the possession ; when no right existed to hold them in pledge for the debt, or to apply them to the payment of it by a sale on the execution. Such seizure and possession is not within any rights of the debtor partner to exclude the other partners from the possession, nor in furtherance of the purposes of the partnership, but in direct contravention of the rights of the other partners.

Formerly it was, undoubtedly, the practice to levy an execution against one of several partners upon all or a part of the goods which belonged to the partnership. Various cases are found, showing the practice at law to seize the specific property, and sell a moiety, or undivided share, of it. 1 *Salk.* 392, *Heydon* vs. *Heydon ;* 2 *Ld. Raym.* 871, *Jacky* vs. *Butler ;* 1 *Shower, Bachurst* vs. *Clinkard ; Comyn's Rep.* 277 ; *do.* 619; 3 *Bos. and Pul.* 288, *Parker* vs. *Pistor ; do.* 289, *Chapman* vs. *Koops ; do.* 254; 11 *Vesey* 85, *Barker* vs. *Goodair ;* 1 *Gallison* 368, *Lyndon* vs. *Gorham and trustee.* The language of some of these cases would indicate that the undivided share of the debtor partner, in the goods seized, was sold, without any reference to the debts of the partnership, although Lord Hardwicke understood the cases in *Salkeld* and *Ld. Raymond* as holding, " that judgment and execution against one partner, for " his separate debt, does not put the other in a worse condi- " tion, for he must have all the allowances made him before " the judgment creditor can have the share of the other " applied to him." 1 *Vesey, sen'r,* 241, *West* vs. *Skip.*

Cases have certainly existed in which a partnership was treated, at law, as a tenancy in common, without reference to a partnership account, so far as it respected such seizure and sale—and as a tenancy in common of each chattel which belonged to the partnership; for in many instances only a part of the goods have been seized, and the undivided share in separate articles has been sold to different individuals. 17 *Ves.* 205; 2 *Ves. and Bea.* 301; 1 *Story's Eq.* 629. Some of the early cases speak of a seizure of all the goods of the partnership; but this, evidently, has not been regarded as necessary to the validity of the proceeding. Probably no more was intended, than that the sheriff could not divide off and seize a moiety of the goods, and sell all which he seized. 1 *East* 367, *Smith* vs. *Stokes.* Although it seems that in *Eddie* vs. *Davison*, *Doug.* 650, the whole interest in the goods seized was sold, and the sheriff was ordered to pay a share of the money levied to the assignees of the other partner. Comyn says, "If A, B and C are partners, and judgment and execution 'is sued against A, only his share of the goods can be sold. 'It is true, the sheriff may seize the whole, because the 'share of each, being undivided, cannot be known; and if 'he seize more than a third part he can sell only a third of 'what is seized, for B and C have an equal interest with A 'in the goods seized; but the sheriff can sell only the part 'of him against whom judgment and execution was sued." *Com. Rep.* 619, *The King* vs. *Manning.*

Proceedings at law would have been more simple, and easier conducted, had this practice been continued; but when the courts of equity adopted the position that the partnership property was a fund, in the first instance, for the payment of the partnership debts—that the interest of each partner in the partnership was only his share of the surplus remaining after the obligations were discharged,—and that the vendee on such sale took *cum onere*, subject to the equities of the other partners, and the creditors (1 *Gallison* 369)—

it became very nearly a matter of necessity for courts of law to change the practice in relation to such sales, although Lord Eldon seems to have expressed something like surprise that they should attempt to administer equity upon the subject. 2 *Ves. and Bea.* 301, *Waters* vs. *Taylor ;* 17 *Ves.* 206. If the several vendees of an undivided moiety of specific parcels of goods became not only tenants in common with the solvent partner, but held the share of the debtor partner in those goods subject to a partnership account, and entitled, instead of the definite share of the goods which they had purchased, only to a share of a surplus which might exist in favor of the debtor partner upon the taking of such account, if any there happened to be, or to nothing, if no surplus existed, as the case might be ; and were liable to a bill in equity, in which these matters were to be adjusted ; there was certainly no propriety in any longer attempting to sell an undivided share of the specific chattels on an execution at law. The reason and necessity for a change is apparent. The sheriff could no longer convey a specific share of particular goods. If he attempted to sell it, the purchaser, through the intervention of a court of equity, might find that he had taken nothing by the sale. But if the partnership was not in fact insolvent, so that a purchaser might take something, to wit. the debtor's interest in the surplus, that interest was not an undivided interest in any particular goods separated from the mass of the partnership effects ; and there would be not only the evils suggested by Mr. Justice Story, as reasons why an injunction should be granted to restrain the sale, (1 Story's Eq. 629) but a question might also arise whether, in case the goods remaining in the hands of the solvent partner were insufficient to pay the debts, the several vendees of the separate portions of the goods, sold at different times, on several executions, were to contribute to make up the deficiency, or whether the vendees under the prior execution and sale were entitled to hold the goods, in which they

had purchased a contingent interest, until those which had been delivered to subsequent vendees had been exhausted. And if this were decided in favor of the vendees under the prior execution, a similar question might arise among them respecting a priority in the sales to themselves.

There must have been a constant collision between the principles of the courts of law thus administered, and the courts of equity, in relation to this subject, had the former continued to authorize the sale of an absolute undivided interest in specific portions of the partnership goods upon execution ; and it has even been thought that such sale by the sheriff ought to be restrained by injunction. *Vide* 1 *Story's Eq.* 629 ; 2 *Johns. Ch. Rep.* 548 ; *Gow on Part.* [252] 278.

If the courts of law are unable to carry out the principles of equity fully, by distributing the joint and separate effects among the joint and separate creditors, respectively, it may be well that they have been disposed to follow the principles established in chancery, so far as the nature of their proceedings will admit, leaving the equity jurisdiction to supply, as well as it may, the deficiency. The principle that the partnership effects are a fund, to be applied in the first place to the payment of the partnership debts, and that the interest of each partner is only his share of the surplus after they are discharged, has accordingly been very generally recognized as a sound principle of law, and has been of very easy application where the separate and the partnership creditors were at the same time striving to satisfy their demands by a sale upon execution. Precedence has been given in such cases to the creditors of the partnership. 5 *N. H. Rep.* 190, *Tappan* vs. *Blaisdell, and cases there cited ;* 9 *Conn.* 410. But this is not enough. Having established this principle, there seemed to be no longer any ground for authorizing the sheriff to seize and sell an undivided interest in specific portions of the goods of the partnership, upon an execution against an individual partner,

even where no execution against the partnership is interposed; and the later authorities hold that he is to sell the interest of the debtor partner. Mr. Justice Story, in his Commentaries on Equity Jurisprudence, says, "It is well 'known, that at law an execution for the separate debt of 'one of the partners may be levied upon the joint property 'of the partnership. In such a case, however, the judg- 'ment creditor can levy, not the moiety, or undivided share 'of the debtor in the property, as if there were no debts of 'the partnership, or lien on the same for the balance due 'to the other partner; but he can levy the interest only of 'the judgment debtor, if any, in the property, after the 'payment of all debts and other charges thereon. In 'short, he can take only the same interest in the property 'which the judgment debtor would have upon the final 'settlement of all the accounts of the partnership. When, 'therefore, the sheriff seizes such property upon an execu- 'tion, he seizes only such undivided and unascertained 'interest; and if he sells under the execution, the sale con- 'veys nothing more to the vendee, who thereby becomes a 'tenant in common, substituted to the rights and interest of 'the judgment debtor in the property seized. In truth, the 'sale does not transfer any part of the joint property to the 'vendee, so as to entitle him to take it from the other part- 'ners; for that would be to place him in a better situation 'than the partner himself. But it gives him properly a right 'in equity to call for an account, and thus to entitle himself 'to the interest of the partner in the property which shall 'upon such settlement be ascertained to exist." 1 *Story's Eq.* 626; *vide, also,* 17 *Vesey* 206, *Dutton* vs. *Morrison;* 2 *Ves. and Bea.* 303; *Gow on Part.* [246] 271; 1 *Wendell* 313, *Crane* vs. *French;* 12 *Wend.* 133; 2 *Conn. Rep.* 516, *Church* vs. *Knox;* 9 *Green.* 28, *Commercial Bank* vs. *Wilkins; Gibson* vs. *Stevens, Hillsboro', Dec. T.* 1834.*

* 7 N. H. Rep. 353.

Morrison
vs.
Blodgett et al.

This seems to be a necessary result, from the adoption of the principle before stated. It has been repeatedly said that the creditor can have no greater right than the debtor had ; and if " he can take only the same interest in the property which the judgment debtor would have upon the final settlement of all the accounts of the partnership," such interest is not an undivided interest in any particular portion of the partnership property, to be reduced into possession to the exclusion of the other partners, or sold to others. 15 *Vesey* 557, *Young* vs. *Keighly.* One partner has no right to convert the partnership goods to his own purposes. 16 *Johns.* 34, *Dob* vs. *Halsey ;* 1 *East* 48, *Shirreff* vs. *Wilks ;* 4 *Johns.* 251, *Livingston* vs. *Roosevelt ;* 5 *Cowen* 489, *Gram* vs. *Cadwell.* Although there may be objections to sustaining an action at law if he do so. 9 *Barn. & Cres.* 532, *Jones* vs. *Yates.* Nor is it an interest which may be subdivided by the partner, and sold out to divers persons, by a sale of his interest in particular portions of the goods belonging to the partnership, and a delivery of the goods. He has no authority to make such sales, and thereby constitute his several vendees tenants in common with his copartners in different portions of the goods. He has no authority, by an assignment of his interest, to take from the creditors, or the other partners, the right to have their claims against the partnership satisfied out of the property. 4 *Johns. Ch. Rep.* 525, *Nicholl* vs. *Mumford.* Nor to make his assignee a partner in his stead, without the consent of his copartners. 14 *Johns.* 318, *Murray* vs. *Bogert ;* 7 *Pick.* 238, *Kingman* vs. *Spurr.* Such assignment operates as a dissolution of the partnership. 17 *Johns.* 525, *Marquand* vs. *N. Y. Man. Co.* In cases where a partner may sell his interest, it would seem that he must sell it entire, and without excluding his copartners from the possession ; and if the sheriff sells he must sell, generally, the interest of the debtor in the whole concern, and not his interest in any separate portion of the property. It is admitted, 12 *Wend.* 131, that the sheriff cannot sell the goods.

If the sheriff cannot sell an interest in specified portions of the goods of the partnership, there seems to be no reason why he should levy upon those goods, and deliver them to the vendee, or why he should in fact reduce them into possession. If "in truth the sale does not transfer any part of the joint property so as to entitle him," (the vendee,) "to take it from the other partner," (1 *Story's Eq.* 626,) on what principle is the sheriff authorized to seize and hold, to the exclusion of the other partners, what his vendee, after a sale of the interest of the debtor is perfected, cannot take from them? If the sheriff sells "only the interest of such partner, and not the effects themselves," (1 *Wightwick's Ex. Rep.* 50, cited 2 *Johns. Ch. Rep.* 549,) upon what ground shall he seize the effects which he is not to sell? If "the creditors of the partnership have a preference to be paid their debts out of the partnership funds before the private creditors of either of the partners," and this "is worked out through the equity of the partners over the whole funds," (1 *Story* 625,) that equity should prevent them from being deprived of the means of payment by reason of such seizure by the sheriff, who can neither sell the goods, nor pay the creditors, and against whom they cannot proceed, so long as he may lawfully hold the goods.

In *Taylor* vs. *Field*, 4 *Ves.* 396, Chief Baron Macdonald, in delivering the judgment of the Court of Exchequer, says, "The right of the separate creditor under the execution 'depends upon the interest each partner has in the joint 'property. With respect to that, we are of opinion that the '*corpus* of the partnership effects is joint property, and 'neither partner separately has any thing in that *corpus ;* 'but the interest of each is only his share of what remains 'after the partnership accounts are taken." And again he remarks, "In law there are three relations ; first, if a person 'chooses for a valuable consideration to sell his interest in the 'partnership trade, for it comes to that ; or if his next of 'kin or executors take it upon his death ; or if a creditor

'takes it in execution, or the assignees under a commission 'of bankruptcy. The mode makes no difference; but 'in all those cases the application takes place of the rule 'that the party coming in the right of the partner comes 'into nothing more than an interest in the partnership, which 'cannot be tangible, cannot be made available or be deliv- 'ered, but under an account between the partnership and 'the partner; and it is an item in the account that enough 'must be left for the partnership debts." And he says further, " If the partner himself therefore had nothing more 'than an interest in the surplus beyond the debts of the 'partnership upon a division; if it turns out that at common 'law that is the whole that can be delivered to, or taken by, 'the assignee of a partner, the executor, the sheriff, or the 'assignee under a commission of bankruptcy, all that is de- 'livered to the creditor taking out the execution is the inter- 'est of the partner in the state and condition he had it," &c.

In 16 *Johns.* 106, *Smith's case*, the court, after saying that the separate creditor takes the share of his debtor in the same manner as the debtor himself had it, and subject to the rights of the other partner, add, " The sheriff therefore does 'not seize the partnership effects themselves, for the other 'partner has a right to retain them for the payment of the 'partnership debts." And in *Cram* vs. *French*, 1 *Wend.* 313, Chief Justice Savage, after considering the subject, says, " The sheriff therefore sells the mere right and title to the partnership property, but does not deliver possession." Vide, also, 5 *N. H. Rep.* 193 ; 2 *Conn. Rep.* 516, 517.

The conclusion, that the sheriff upon an execution against one partner is not to deliver to his vendee, and is not to seize the partnership effects, is sustained, therefore, not only by the reason of the thing, after the adoption of the general principle before stated, but by express authority.

There is undoubtedly a difficulty in making a sale of the entire interest of one partner upon execution, without the aid of equity in taking an account before the sale, because,

ordinarily, it cannot be known until an account is taken what is the value of the interest to be sold. But this difficulty cannot change the right of the creditor to have the interest of his debtor, whatever it may be, appropriated to the payment of his debt; and although, in the usual course of sales on execution, at law, no time can be given for such account after a seizure upon the execution, it is generally for the interest of both creditor and debtor that the full value should be obtained upon such sale, and this part of the matter may perhaps be well left to their superintendence and management. 2 *Johns. Ch. Rep.* 548, *Moody* vs. *Payne.* If the interest of the debtor partner only is to be sold, there can be no reason why equity should interfere by way of injunction to restrain the sale, on account of the interest of the other partners.

There are other difficulties attending this subject, some of which cannot, perhaps, be fully obviated without legislation.

It would seem that, like bankruptcy in England, such sale must operate, *ipso facto*, as a dissolution of the partnership, (17 *Johns.* 529, 535,) and several of the authorities before cited say that the purchaser becomes a tenant in common with the other partner, and takes the undivided share subject to the rights of the other partner. *Cowp.* 449, *Fox* vs. *Hanbury; Gow on Part.* [285,] 310, [365,] 391; 2 *Swanst.* 586, *Skipp* vs. *Harwood.* If the purchaser is to be regarded as a tenant in common, with the other partner, of the partnership goods, he may perhaps have the ordinary rights of such tenant, and be entitled, like the assignees in bankruptcy, to hold such of the goods of the partnership as may come to his hands, subject to the account. 5 *Johns. Ch. Rep.* 70, *Murray* vs. *Murray.* There are, however, expressions in some of the cases indicating that such sale would give the purchaser no right to take possession of any of the goods, but only to demand an account, (16 *Johns.* 106, 109; 4 *Johns. Ch. Rep.* 525; 2 *Conn. Rep.* 517,)

and perhaps the same duties do not devolve on him as upon an assignee, or the same rights accrue to him.

In other questions we have less of authority to aid us. The mode in which service of the writ is to be made, under our attachment laws, so as to secure to the creditor, in the best manner, the full value of the interest of his debtor, as then existing, has never been determined. "Chattels which cannot lawfully be seized on execution, cannot lawfully be attached." 6 *Mass. Rep.* 243, *Pierce* vs. *Jackson.* Whether under our present laws the creditor can do more than return a general attachment of the interest of his debtor in the partnership, and summon the other partners as his trustees ; and what are the effects of such a service upon the rights and duties of the other partners, and of course upon the action of the debtor himself?—Whether it can suspend his right to interfere with the partnership property so long as the attachment exists, or whether he may proceed to act as partner until judgment and sale upon execution?—And whether, after an attachment, the creditor or any of the partners may maintain a bill in equity for an account before a seizure and sale of the interest of the debtor on the execution?—are questions which may arise, but upon which this case does not call for an opinion.

We might have declined to express an opinion upon the matters already considered. These defendants are in no situation to contest the right of a creditor of one partner to attach the partnership goods. Prior to the time when this attachment was made, the goods attached belonged to the firm of Dickinson & Blodgett, and the debt on which they were attached was a partnership debt due from them. Buffum, one of the defendants, purchased the interest of Dickinson, and agreed to pay his share of the debts, and indemnify him against them. Blodgett and Buffum—having continued the business as partners—being the persons who ought to pay the debt—and having the property which was formerly liable for its payment—and the sheriff having

seized that property—gave this receipt, undertaking to deliver the goods or pay the money, and the sheriff thereupon returned an attachment.

There is no principle, equitable or legal, upon which they ought now to be permitted to set up this defence, and avoid their contract. It may be considered as equitably the partnership debt of the defendants. They are the very persons who ought to pay, and whose goods ought, in justice, to be taken, and the goods actually taken were those upon which the debt ought equitably to be charged. We should have hesitated long, under such circumstances, before holding that these goods could not lawfully be attached upon this demand, had no receipt been given. But when the defendants, instead of contesting the right of the officer to attach, assented to it—undertook to return the goods or pay the money—and the officer thereupon returned an attachment—all question upon the matter was put at rest. It is not competent for them under these circumstances to avoid this contract.

In fact, it is not necessary for the plaintiff to rely upon the circumstances existing before the attachment. The authorities cited by his counsel show it to be well settled, that where an officer has made a nominal attachment, taking the receipt of a third person, and returning the goods as attached, the receipter is responsible, and cannot defend upon the ground that no goods were in fact seized, and that his contract was without consideration. 11 *Mass.* 219; *ditto* 319; 14 *Mass.* 195; 2 *Vermont Rep.* 212; 4 *Vermont* 505; *Story on Bailment* 95; 8 *Wend.* 614; 12 *Pick.* 144.

*Judgment for the plaintiff.*