## PAGE *vs.* CARPENTER.

Where there was a sale of 150 nests of tubs, and a delivery of an uncertain number, with an agreement that if the number delivered was in fact less than 150 nests, the vendors should make up the amount; and if more, that the vendee should have that number, of those delivered—*Held* that the contract of sale was executed, and the property passed, to the extent of the number sold; and if the number delivered was greater, the vendee might select the number sold, in a reasonable time.

A partnership sold property; the price was paid, and a formal delivery made, but the property remained in possession of the partnership, under an agreement that they should store it for a time, and then transport it to another place—*Held* that the sale was valid as between the parties to it, but void as to creditors of the partnership who attached the property while it remained in the possession of the partners, there being no sufficient excuse for the want of a change of possession.

Where a partnership was dissolved, and a creditor of the partnership afterwards took the joint and several note of the individual partners, and then commenced a suit against one of the signers—*Held* that he could not, in such suit, be regarded as a creditor of the partnership, or attach the partnership property;

and that he could not, therefore, object to a sale of such property, that there was no change of the possession.

A sheriff attached partnership property on a writ against the partnership, and afterwards, while the property was in his possession under that attachment, he returned an attachment of the same property on a writ against one of the partners—*Held* that this latter attachment did not render him liable to an action of trover in favor of one who claimed under a sale from the partnership, (but was unable to hold against the partnership creditors,) so long as the attachment subsisted on the demand against the partnership; notwithstanding the partnership debt was afterwards satisfied by the sale of other property, attached at the same time.

TROVER, for 138 nests of wooden tubs, alleged to have been converted by the defendant August 17, 1837, which is the date of the plaintiff's writ.

It appeared in evidence, that on the 30th of December, 1836, the plaintiff purchased of Derby & Howe, who were then partners in the manufacture of tubs, in Hinsdale, 150 nests of tubs, six in a nest, for the sum of $525, which was paid partly by notes the plaintiff then held against Derby & Howe, partly in cash and other property, and for the remainder he gave his note, which he paid within two or three weeks afterwards.

The plaintiff purchased the tubs for the purpose of sending them to New-York, he having at that time the agreement of a Mr. Smith for the purchase of 100 nests, to be sent by the first boats in the spring of 1837; and it was agreed by the plaintiff and Derby & Howe, that the tubs should be stored in the barn occupied by Derby & Howe, in Hinsdale, where they were at the time of the purchase, and be delivered at the landing in Hinsdale, by them, free of expense to the plaintiff, and in good order for market, as early as wanted that spring.

It appeared, farther, that at the time of the purchase the parties agreed upon the price, and then went to the barn where the tubs were—that there was a large number of nests of tubs in the barn, and some parts of nests—and a delivery was made, but they were not counted. Derby, who was a witness, testified that there were not 150 full nests he

thought—and that the agreement between the parties was, that if there were not 150 nests, Derby & Howe were to make up the amount—if more, the plaintiff was to have that number.

In February following, the partnership of Derby & Howe was dissolved. Howe continued the business, and remained in possession of the barn, and sold three or four nests from those in the barn at the time the plaintiff purchased ; but it did not appear that this was with the assent or knowledge of the plaintiff.

In April, the plaintiff took away twelve nests, and previous to the attachment he requested a witness to have the tubs counted off, properly put up, and sent to the landing ; but owing to the absence of Howe this was not done.

On the 9th of May, 1837, W. R. Platts, a deputy of the defendant, who is sheriff of the county, attached these tubs, and other property, on a writ, William Haile against Derby & Howe. There were then 94 nests, and some parts of nests. On the 19th of the same May he made another attachment of the tubs on a writ, Philip Ripley and others against Howe alone, subject to the former attachment. Ripley's suit was founded upon two joint and several notes, dated May 10, 1837, made by Derby & Howe after the dissolution of their partnership. The notes were given for goods sold to the partnership during its continuance. Neither Platts or Haile had any notice of the sale to the plaintiff, until after the attachment on Haile's writ, but notice of it was given to both immediately after that attachment.

Boating had commenced upon the river some time before the attachment, but a freshet occurred afterwards, and it was suspended at that time.

Two or three days after the attachment the plaintiff claimed the tubs, and before the commencement of this suit made a demand upon Platts, and upon the defendant.

Haile's demand was satisfied by a sale of the other property attached, August 19, 1837, and the tubs were sold, soon

after, for the purpose of satisfying the demand of Ripley and others against Howe.

A verdict was taken for the plaintiff, by consent, subject to the opinion of this court.

*Wilson,* for the plaintiff.

*Chamberlain, & Mead,* for the defendant.

PARKER, C. J. By the contract of the 30th December, 1836, the property in the tubs passed to the plaintiff, as between the parties to that contract, and the plaintiff might well have held them against Derby & Howe. There was a formal delivery of the tubs then in the barn. The plaintiff had the right to take possession of the whole. If there were less than one hundred and fifty nests, as the evidence seems now to show, he had a right to hold and dispose of the whole. Had there been more, he might have selected that number in a reasonable time, and would have been bound to return the surplus to Derby & Howe. It is not a case of an executory contract, but of an executed sale, so far as the parties to it were concerned.

But this sale, although valid as between the parties, must be regarded as fraudulent as to the creditors of Derby & Howe, because the property, after the sale, was permitted to remain in their possession. It was not removed, and the plaintiff took no lease of the barn. He had no control over it, but Derby & Howe occupied it as before the sale. They agreed that the property should be stored there until boating commenced, and they were then to transport it to the landing, and deliver it there. This gave Derby & Howe an opportunity to treat the property as their own after the sale, and thereby obtain a false credit. It appears that Howe afterwards actually sold part of it, as if he was the owner. The case comes clearly within the principle laid down in *Coburn* vs. *Pickering,* 3 *N. H. Rep.* 415 ; and the defendant's

deputy, Platts, had a lawful right to attach the property upon the demand of Haile against Derby & Howe, and to hold it for the security of that demand until thirty days after the judgment. *See, also,* 4 *N. H. Rep.* 314, *Trask* vs. *Bowers ;* 8 *N. H. Rep.* 288, *Paul* vs. *Crooker.*

But he had no right to attach and hold it on the writ in favor of Ripley and others against Howe alone. As to every person except the creditors of Derby & Howe, the property had passed to the plaintiff. Derby & Howe could not contest his right to it. Neither of them, singly, could contest his title. The creditors of the partnership might deny its validity as to them, because there had been no change of possession ; and there being no sufficient explanation of this circumstance, the evidence of fraud as to them was conclusive. If, however, there had been no sale, the creditors of Howe could not have attached the property itself. They could have taken only the interest of their debtor in the partnership property, after an adjustment of the partnership debts. 8 *N. H. Rep.* 238, *Morrison* vs. *Blodgett.* Having no right to attach and take possession of the tubs while they were the property of Derby & Howe, they cannot object to the sale, that there was no change of the possession. That objection can be made by those only who had a lawful right to seize them. The sale cannot be regarded, therefore, as fraudulent as to the creditors of one of the partners, nor can it enlarge their rights.

Nor can Ripley and the others, who were plaintiffs in the second action, be regarded as creditors of the partnership of Derby & Howe, in this case. They had, originally, a debt against the partnership ; but having, after the dissolution, taken a joint and several note, and having commenced a suit on that note against Howe alone, they are not in a situation now to claim the rights of creditors of the partnership. They cannot in that suit have judgment against the partners. Their judgment must be against Howe alone ; and only his property and his interest in the partnership effects after the

partnership accounts are taken, can be sold on such judgment. 1 *Wend.* 311, *Craine* vs. *French ;* 7 *N. H. Rep.* 357, *Gibson* vs. *Stevens ;* 8 *N. H. Rep.* 238.

Upon these principles this action cannot be sustained, because the sheriff, at the time when it was commenced, had the lawful custody of the property, under the attachment upon Haile's writ against the partnership. Having a lawful right to the possession of the property under that writ, his return that he had attached it on the writ of Ripley and others, subject to the former attachment, cannot amount to a conversion. Although he had no right to make the latter attachment, that did not vacate the former. He had still the right to hold the property as he did hold it ; and he might have sold it on Haile's execution, and have applied the avails in satisfaction of it, had not that execution been satisfied by the sale of other property.

It was not until after this action was commenced that his right to hold it ceased. There was, therefore, no unlawful conversion of the property until the sale of it on the execution of Ripley and others, which was subsequent to the commencement of this suit ; and the action, in the view we have taken of the rights of the parties, was commenced prematurely.

The verdict for the plaintiff must be set aside, and, unless the plaintiff elects to become nonsuit, the case must be transferred to the common pleas, for a

*New trial.*