## NEWMAN & a. v. BEAN.

The interest of a partner is not an interest in the specific articles belonging to the firm, but only an interest in the surplus, after the debts of the firm shall have been paid.

An action may be maintained against a third person who seizes goods on execution, belonging to a partnership, for the debt of an individual partner, and excludes the other partners from the possession of them.

An agreement between two persons that one of them should act as the agent of the other in selling goods, and that his services should be remunerated by one half of whatever he could make after paying expenses, does not make them partners.

Correspondence and business transactions between parties, which are so connected with an act as to throw light upon it are admissible in evidence, as a part of the *res gestæ.*

TROVER, for a quantity of writing paper and other articles, alleged to have been converted on the 30th November, 1847.

The taking and conversion of the property by the defendant, as also the partnership of the plaintiffs, were admitted; and also that the defendant was a deputy of the sheriff of this county, and took the goods, on a valid execution against the firm of Roby, Kimball & Merrill; of which firm Rufus Merrill had been a partner.

The plaintiffs introduced a written contract between Mark H. Newman and said Merrill, without date, but proved to have been made in February, 1846, as follows:

"I will furnish you, as my agent, with as many Rhetorical Readers, in sheets, as you can dispose of, at 20 cents per copy; and you may go on and trade as you think for my advantage, and fill up a store in Concord, with such books as will sell there, paper, rags, leather, or any thing else which will sell at a profit.

"I will order from you such stock as I may want, from time to time, for which I am to allow the store 5 per cent. advance of cost.

"Such as I do not want, you are to sell, and have one half of what you receive over the cost, after paying store expenses.

"You can make up writing and small blank books, if you find it for your interest; and get for them such other stock as you may not be able to get for Readers; and I will furnish you, during the year, with cash books, such as Harpers' and Crocker & Brewster's, to the amount of five hundred dollars, if you should want so much; and you are to forward to me, the amount of such books when sold, the store having the profits.

"You are to furnish me, on the first of each month, with an account of your trades, that I may order such as I can sell here, and keep your stock down as much as I can.

"You are to incur no liabilities as my agent. I am to furnish the capital, without interest; and your services are to be remunerated by one half of what you can make after paying expenses.

"It is understood that the capital which I am to keep at Concord, is to be twenty-five hundred dollars; any surplus of this sum, I am authorized, at any time, to order, on the terms of this contract.

"Full settlement to be made as often as once a year, and oftener, if required, on my part."

The plaintiffs introduced Rufus Merrill as a witness, who testified that previous to the execution of the written contract, and after the 5th of November, 1845, he had received of Newman, goods to the amount of about $975, to be sold as his agent; that these goods and the proceeds of such as had been sold, remained in his hands when the contract was made; and that these goods and their proceeds were held by him and accounted for, under the written contract.

The defendant contended that a large amount of Merrill's property had been bought into the stock, and held by him under color of this contract and arrangement with Newman.

To show how the property came into Merrill's hands from Newman, and that the contract was *bona fide*, and that the goods were all the property of Newman and of Newman & Co., the plaintiffs introduced the correspondence and negotiation which led to the contract, and bills of invoice, and letters of advice, accompanying the transmission of the goods from Newman and Newman & Co., to Merrill, and his answers.

Merrill also testified, that in May following the execution of the contract, he represented to Newman that it would be a great convenience, if he could get credit on Newman's account in certain cases; that Newman assented to this; and that he had accordingly got goods, on his credit, in some cases of mutual accounts, and purchases of articles necessary to carry on the business.

After the making of the written contract, and previous to the 6th of February, 1847, the partnership of Newman & Co. was formed; and on that day the account of Newman with Merrill, as agent, showed a balance of goods sent to Merrill, and in his hands, more than he had returned, of $3,482.79; and this balance was then transferred from the books of Newman to the books of Newman & Co.; and the account was continued with Merrill, as agent, to the time of the attachment. Previous to this time, Merrill had been informed of the partnership; and early in February, 1847, rendered to Newman & Co. his

accounts of the agency for the preceding year ; and after this account was rendered, they called on him for explanations and estimates, which he gave them. They then informed Merrill that they had concluded to continue the business another year. The stock in the hands of Merrill, at this time, was between four and five thousand dollars.

After this, and down to the time of the attachment, Newman & Co. continued to forward goods to Merrill, under the terms of the contract with Newman; and Merrill remitted money and other proceeds of the business to them. Merrill testified, that the goods taken by the defendant were wholly the goods of Newman & Co., sent from Newman and Newman & Co., or the proceeds of those so received and sold by him, under his contract ; that he had no property or interest in the goods whatever. The stock on hand, at the time of the taking by the defendant, amounted to between forty-five and fifty hundred dollars.

To the evidence of the plaintiffs, the defendant objected, and took the following positions:

1. That the written contract does not tend to show any agency between the plaintiffs and Rufus Merrill, and consequently has no tendency to show property in the plaintiffs.

2. That the correspondence between Newman and Merrill, and Newman & Co. and Merrill, and the testimony of Merrill as to what transpired between himself and Newman, and Newman & Co., and himself, was all inadmissible, inasmuch as it had a tendency to vary the written contract.

The Court ruled it all admissible, for the purposes stated by the plaintiffs.

3. That the written agreement or proposition, signed by Newman and Merrill, and the evidence introduced by the plaintiffs, in support and explanation of the same, instead of establishing an agency, proves a partnership.

A verdict was taken, by consent, for the plaintiffs ; and it was agreed that judgment should be entered thereon, or the verdict set aside and a new trial granted, as the opinion of the Court should be, upon the whole case.

*Pike*, for the defendant. The question is whether the contract makes ,the parties partners, or whether one of them is an agent only. If Merrill be the agent of the others, the plaintiffs cannot recover, as they had not the possession of the property, nor the right of possession, and in trover one of these things is necessary. *Odiorne* v. *Colley*, 2 N. H. Rep. 66 ; *Jones* v. *Sinclair*, Ibid. 319. ˙ The property was in the hands of Rufus Merrill, and the plaintiffs had no right of possession. If Merrill were the agent, he owed Newman $3400, and the profits were to be divided equally between Newman and Merrill, and the interest in the profits was not an interest in any particular part of the stock. Having this interest he had a right to the possession. He was an owner.

But, fairly construed, the agreement made the parties partners. *Dob* v. *Halsey*, 16 Johns. 35–40. We can make no other inference than that Merrill was to have a share in the net profits.

*Perley*, for the plaintiffs. Were these the goods of Rufus Merrill, so that they were liable for the debts of the firm, he being a partner ?

We do not understand the case as stating that any particular sum, as profits, was in the hands of Merrill. As matters stood in New York, between the firm and their agent, the papers show that there was a large amount in the hands of Merrill, but that sum was not characterized as *profits*.

Was there a partnership ? If not, the defendant's case ends. Now Merrill was to have no power as a partner. If any thing can be clear, it is that he was not regarded by the parties as a partner. He had no authority to pledge the credit of Newman. Story on Part. §§ 32, 38, 48. If the money received by him was not received as profits, but merely as compensation for services, they were not even partners among themselves. It has been held that an agent who is paid by a proportion of the profits of an adventure, is not therefore a partner in the goods. *Meyer* v. *Sharpe*, 5 Taunt. 74 ; *Smith* v. *Watson*, 2 Barn. & Cres. 401 ; Story on Part. §§ 27, 28, 29 ; *Gibson* v. *Stevens*, 7 N. H. Rep. 352–359.

8 *

The only interest a partner has, is in the surplus that may remain after payment of the partnership debts; and upon such surplus the creditor can get no greater right than his debtor possessed. *Morrison* v. *Blodgett*, 8 N. H. Rep. 245 ; *Page* v. *Carpenter*, 10 N. H. Rep. 77.

There was, in fact, in this case, no partnership. Merrill was only the agent of Newman & Co.; and his share of the profits was nothing but a compensation for his services. The person who owns the property should commence a suit for it. There is no plea that Merrill was not joined, and the plaintiffs may hold his share.

If the property had been destroyed, the loss would have fallen upon Newman & Co.; for, as we contend, Merrill had only an authority which might be revoked at the pleasure of the other party.

GILCHRIST, C. J. It is unnecessary to settle the question whether the plaintiffs were partners with Merrill or not. However that may be, the action may be maintained. It appears, from the case of *Morrison* v. *Blodgett*, 8 N. H. Rep. 245, that an action may be maintained against any third person who should seize goods on execution, belonging to a partnership for the debt of an individual partner, and exclude the other partners from the possession of them. *Page* v. *Carpenter*, 10 N. H. Rep. 81. The interest of a partner is not an interest in the specific articles belonging to the firm, but only an interest in the surplus that may remain after the debts of the firm shall have been paid. When the property of the firm is in the possession of one of the partners, he holds it as a fund out of which the debts are to be paid. His share is not separable from the shares of the others, for he has no separate property in the assets of the firm. Perhaps it may be said, in the first instance, that in such case he holds the property rather in the character of a trustee for the firm, than in that of an owner. He cannot recover any specific portion of the property, for he owns none. If the property should be taken from his possession, why should he not recover the entire value ? He would hold the proceeds of the property

as he held the property itself. Such seems to be the substance of the law on this matter, as it is stated in the cases of *Morrison* v. *Blodgett* and *Page* v. *Carpenter*, above cited.

But there was no partnership existing between the plaintiffs and Merrill. There was no agreement to share the profit and loss. There was merely a mode provided for paying Merrill for his services. There is a clause to that effect in the agreement, in the following words: "You are to incur no liabilities, as my agent. I am to furnish the capital without interest, and your services are to be remunerated by one half of what you can make, after paying expenses." This clause places the matter beyond a doubt. Merrill was performing services for the other party, and his remuneration depended on his skill and care as a man of business. That the amount of his compensation was uncertain, and depended on the various contingencies of business, did not alter his position, and did not make him any less an agent.

The defendant contends that the correspondence between Newman and Merrill, and between Newman & Co. and Merrill, was inadmissible, inasmuch as it has a tendency to vary the written contract between Newman and Merrill.

The case finds that the correspondence and negotiation which led to the contract, the invoices and letters of advice accompanying the transmission of the goods, from Newman, and from Newman & Co. to Merrill, and Merrill's answers, were introduced by the plaintiffs, for the purpose of showing how the property came into Merrill's hands from Newman, and that the contract was *bona fide,* and that the goods were the property of Newman, and of Newman & Co. The defendant's position is, that Merrill was holding his own property, by virtue of an arrangement which should give him a plausible pretence for representing it as the property of the plaintiffs.

The details of the correspondence are not stated in the case; but it is to be inferred that they had a tendency to establish the positions assumed by the plaintiffs. The principles which govern the admission of evidence as a part of the *res gestæ,* are well settled. It must be " calculated to unfold the nature and quality of the facts it is intended to explain." It should be so connected with

the principal act, as to be regarded as the result and conse-
quence of the existing motives. *Mahurin* v. *Bellows*, 14 N. H.
Rep. 210.

If the correspondence tended to show, as we have a right to
suppose it did, that the contract was made in good faith, and
that the goods were the property of the plaintiffs, and the man-
ner in which they came into the hands of Merrill, it was compe-
tent evidence, because it accompanied the transmission of the
goods, and threw light upon the main question in the case, that
of property.

The testimony of Merrill, throughout, tends to prove that he
had no property in the goods. The case finds that in May fol-
lowing the execution of the contract, he represented to Newman
that it would be a great convenience if he could get credit on
Newman's account, in certain cases; that Newman assented to
this, and that he had accordingly got credit on Newman's ac-
count, in some cases of mutual accounts and purchases of arti-
cles necessary to carry on the business. This is all very intelli-
gible, and very far from proving the existence of a partnership.

*Judgment on the verdict.*